UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| ELISA BROWN, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) Case No. |
| v. | ) |
| | ) JURY TRIAL DEMANDED |
| STATE FARM MUTUAL | ) |
| AUTOMOBILE INSURANCE | ) |
| COMPANY, | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

## COMPLAINT

COMES NOW Plaintiff Elisa Brown ("Brown" or "Plaintiff"), by and through

undersigned counsel, and submits her Complaint against State Farm Mutual

Automobile Insurance Company ("State Farm" or "Defendant"), stating as follows:

## I.    NATURE OF COMPLAINT

1.

This is an action by a former employee of State Farm for discrimination,

interference, and retaliation in violation of the Americans with Disabilities Act of

1990 as amended by the ADA Amendments Act of 2008, 42 U.S.C. § 12101, et. seq.

(collectively, the "ADAAA") and retaliation in violation of Title VII of the Civil

Rights Act of 1964 ("Title VII").

## II.    JURISDICTION AND VENUE

### 2.

This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this is a civil action arising under the ADA and Title VII.

### 3.

Venue is proper in this district under 28 U.S.C. § 1391. All of the acts and omissions complained of herein occurred within the Northern District of Georgia.

## III.    ADMINISTRATIVE PREREQUISITES

### 4.

Plaintiff timely filed her charge of disability and race discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") on February 19, 2021 (Charge No. 410-2021-02055).

### 5.

Plaintiff received a right-to-sue notice with respect to Charge No. 410-2021-02055 from the EEOC on June 13, 2023.

## IV.   PARTIES

### 6.

Brown resides in Gwinnett County, Georgia, and is a former employee of State Farm.

### 7.

At all times relevant hereto, Brown was an individual with a disability within the meaning of the ADAAA.

### 8.

At all times relevant hereto, Brown was a "qualified individual" as defined by the ADAAA because she was able to perform the essential functions of her position with or without reasonable accommodations.

### 9.

State Farm is an Illinois insurance company that regularly conducts business in the State of Georgia and in this district.

### 10.

State Farm is a covered "employer" as defined by the ADA and Title VII.

11.

State Farm may be served with process by delivering a copy of the summons and complaint to its registered agent, Corporation Service Company, at 2 Sun Court, Suite 400, Peachtree Corners, GA 30092.

## V.   FACTUAL ALLEGATIONS

12.

Brown worked for State Farm for over 20 years before being unceremoniously terminated on February 19, 2021.

13.

Prior to the events discussed herein, Brown consistently received good performance reviews and was awarded several company achievement awards in recognition of her stellar performance.

14.

Plaintiff was diagnosed with overactive bladder syndrome in late February 2020.

15.

As a result of her medical condition, Plaintiff suffered from urinary incontinence and needed frequent restroom breaks.

16.

Plaintiff's immediate supervisor, Sherika Jamerson, knew of Plaintiff's disability and the need to take frequent restroom breaks.

17.

On October 8, 2020, Jamerson told Plaintiff that she was no longer allowed to take unscheduled restroom breaks.

18.

Plaintiff protested that her medical condition required her to go to the bathroom more frequently; however, Jamerson insisted that no additional breaks would be allowed.

19.

That same day, October 8, 2020, Plaintiff complained to HR that Jamerson was harassing her about her medical condition and refused to allow medically necessary breaks.

20.

On October 13, 2020, HR responded that the section manager, Ty Walker, had been informed of Plaintiff's complaint and that Walker would discuss the complaint with Jamerson.

21.

Shortly thereafter, Jamerson pulled Plaintiff's door entrance records to review her restroom breaks and issued her a counseling for unscheduled breaks and phone usage.

22.

When issuing the counseling, Jamerson knew that the restroom breaks were necessitated by Plaintiff's medical condition and that Plaintiff had received a phone call from her urologist on the day in question.

23.

Jamerson did not similarly review any of the other employees' door entrance records and did not monitor any of the other employees' restroom usage.

24.

On October 15, 2020, Plaintiff submitted a formal request for ADA accommodations to Cigna, the company's HR vendor, which was approved.

25.

Jamerson nevertheless continued to harass Plaintiff and interfere with her use of accommodations. In fact, Jamerson's harassment of Plaintiff only intensified.

26.

Jamerson started hyper scrutinizing Plaintiff's work, questioning her every move, and even followed Plaintiff to the bathroom to monitor how long she was in there.

27.

Jamerson also set new job expectations for Plaintiff, requiring Plaintiff to start processing two stacks of PIP jobs daily and suddenly changing a job-function category that Plaintiff had been using for five years.

28.

Jamerson further issued Plaintiff her first-ever negative performance review, stating Plaintiff needed to "make sustained improvement," though she failed to inform Plaintiff of the existence of this review.

29.

Jamerson then deducted PTO credits for hours that Plaintiff worked in October, even after Plaintiff showed proof of her work.

30.

When Plaintiff tried to apply for a lateral position in a different department, Jamerson refused to give Plaintiff a recommendation despite providing one for Plaintiff's coworker.

31.

On October 22, 2020, Plaintiff complained to section manager Walker about Jamerson's continued harassment and interference.

32.

Walker shrugged off her concerns and responded: "Elisa, you have to keep [the bathroom breaks] to a minimum."

33.

In November 2020, Jamerson told Plaintiff that she had to start logging the start time and end time of each of her restroom breaks in the system.

34.

Jamerson did not require Plaintiff's teammates to similarly log their restroom breaks.

35.

The disparate application of the restroom break policy negatively affected Plaintiff's productivity score compared to her teammates (who did not have to log their restroom breaks).

36.

On December 28, 2020, Plaintiff made a second complaint to HR about Jamerson's harassment and interference with her medical accommodations.

37.

In January 2021, Plaintiff inquired with the EEOC about filing a charge of discrimination, and the EEOC scheduled her for an appointment on February 12, 2021.

38.

Plaintiff informed two different managers, Willie Flynn and Lynn Vanderford, that she had contacted the EEOC and had an upcoming appointment with them.

39.

Upon information and belief, Flynn informed HR that Plaintiff had reached out to the EEOC, and HR told Flynn that Plaintiff should have come to them first (though Plaintiff had already filed two internal complaints with HR to no avail).

40.

On or about February 15, 2021, Plaintiff told Flynn that her appointment with the EEOC had been rescheduled for February 19, 2021.

41.

Plaintiff completed her EEOC interview on the morning of February 19, 2021, and filed a charge of race and disability discrimination and retaliation that same day.

42.

Later that same afternoon on February 19, 2021, Defendant terminated Plaintiff's employment.

43.

DCSD's actions constitute unlawful discrimination, interference, and retaliation.

44.

Brown has suffered significant pecuniary and non-pecuniary damages as a direct result of Defendant's unlawful actions.

**COUNT I**
**ADA Failure to Accommodate**

45.

Brown repeats and realleges paragraphs 12-44 as if fully set forth herein.

46.

Brown has at all relevant times had a covered disability under the ADA.

47.

Brown has at all relevant times been a qualified individual who can perform the essential functions of her job with or without reasonable accommodation.

48.

Brown requested reasonable accommodations for a known disability.

49.

Defendant initially approved Brown's accommodation request; however, it then refused to comply with the approved accommodation plan and punished Plaintiff for using her approved ADA accommodations.

50.

Thus, Defendant failed to provide reasonable accommodations.

51.

As a direct and proximate result of Defendant's wrongful acts, Brown has suffered and continues to suffer substantial economic and non-pecuniary damages.

52.

Defendant willfully and wantonly disregarded Brown's rights, and its actions toward Brown were undertaken in bad faith.

53.

Brown is entitled to lost wages and benefits, front pay, compensatory damages, punitive damages, attorney fees and costs, prejudgment interest, and any other relief available under the law.

## COUNT II
## ADA Discrimination

54.

Brown repeats and realleges paragraphs 12-44 as if fully set forth herein.

55.

Brown has at all relevant times had a covered disability under the ADA.

56.

Brown has at all relevant times been a qualified individual who can perform the essential functions of her job with or without reasonable accommodation.

57.

Defendant treated Brown less favorably than similarly situated individuals outside of her protected class because of her disability.

58.

Defendant terminated Brown because of her disability.

59.

Defendant's proffered reasons for the termination are false and mere pretext for discrimination.

60.

As a direct and proximate result of Defendant's wrongful acts, Brown has suffered and continues to suffer substantial economic and non-pecuniary damages.

61.

Defendant willfully and wantonly disregarded Brown's rights, and its actions toward Brown were undertaken in bad faith.

62.

Brown is entitled to lost wages and benefits, front pay, compensatory damages, punitive damages, attorney fees and costs, prejudgment interest, and any other relief available under the law.

## COUNT III
## ADA Interference

63.

Brown repeats and realleges paragraphs 12-44 as if fully set forth herein.

64.

Brown has at all relevant times had a covered disability under the ADA.

65.

Brown has at all relevant times been a qualified individual who can perform the essential functions of her job with or without reasonable accommodation.

66.

Defendant interfered with Brown's statutorily protected ADA rights by coercing, intimidating, threatening, harassing, and interfering with Plaintiff in the exercise or enjoyment of, or on account of having exercised or enjoyed, rights granted or protected by the ADAAA. 42 U.S.C. § 12203(b); 29 C.F.R. § 1630.12(b).

67.

Specifically, Defendant interfered with Brown's statutorily protected ADA

rights by, among other things:

- coercing Plaintiff to relinquish or forgo an accommodation to which she was entitled;
- intimidating Plaintiff from using accommodations for a known disability;
- subjecting Plaintiff to unwarranted discipline because she requested reasonable accommodation.

*See* Equal Employment Opportunity Commission, *Enforcement Guidance on Retaliation and Related Issues*, § III (Aug. 25, 2016)      (available at

https://www.eeoc.gov/laws/guidance/enforcement-guidance-retaliation-and-related-issues) (discussing examples of unlawful ADA interference).

68.

As a direct and proximate result of Defendant's wrongful acts, Brown has suffered and continues to suffer substantial economic and non-pecuniary damages.

69.

Defendant willfully and wantonly disregarded Brown's rights, and its actions toward Brown were undertaken in bad faith.

70.

Brown is entitled to lost wages and benefits, front pay, compensatory damages, punitive damages, attorney fees and costs, prejudgment interest, and any other relief available under the law.

## COUNT IV
## ADA Retaliation

### 71.

Brown repeats and realleges paragraphs 12-44 as if fully set forth herein.

### 72.

Brown has at all relevant times had a covered disability under the ADA.

### 73.

Brown has at all relevant times been a qualified individual who can perform the essential functions of her job with or without reasonable accommodation.

### 74.

Brown engaged in protected activity under the ADA when she requested reasonable accommodations for a known disability.

### 75.

Brown also engaged in protected activity when she complained to Defendant of interference with her medical accommodations, discrimination, and retaliation.

### 76.

Brown further engaged in protected activity under the "participation clause" of the ADA, 42 U.S.C. § 12203(a), when she filed a charge of disability discrimination and retaliation with the EEOC.

77.

Defendant subjected Brown to a materially adverse action when it terminated her employment.

78.

The protected activities were causally connected to the subsequent adverse action.

79.

Defendant's proffered reasons for the adverse action are false and mere pretext for retaliation.

80.

As a direct and proximate result of Defendant's wrongful acts, Brown has suffered and continues to suffer substantial economic and non-pecuniary damages.

81.

Defendant willfully and wantonly disregarded Brown's rights, and its actions toward Brown were undertaken in bad faith.

82.

Brown is entitled to lost wages and benefits, front pay, compensatory damages, punitive damages, attorney fees and costs, prejudgment interest, and any other relief available under the law.

## COUNT V
## Title VII Retaliation

Brown repeats and realleges paragraphs 12-44 as if fully set forth herein.

83.

Brown engaged in protected activity under the "participation clause" of Title VII, section 704(a), 42 U.S.C. § 2000e-3(a), when she filed a charge of race discrimination and retaliation with the EEOC.

84.

Defendant subjected Brown to a materially adverse action when it terminated her employment.

85.

The protected activity was causally connected to the subsequent adverse action.

86.

Defendant's proffered reasons for the adverse action are false and mere pretext for retaliation.

87.

As a direct and proximate result of Defendant's wrongful acts, Brown has suffered and continues to suffer substantial economic and non-pecuniary damages.

88.

Defendant willfully and wantonly disregarded Brown's rights, and its actions toward Brown were undertaken in bad faith.

89.

Brown is entitled to lost wages and benefits, front pay, compensatory damages, punitive damages, attorney fees and costs, prejudgment interest, and any other relief available under the law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays for relief as follows:

(a)     judgment in favor of Plaintiff and against Defendant on all counts;

(b)     damages sufficient to make Plaintiff whole by providing for out-of-pocket losses as well as back pay in an amount equal to the sum of any wages, salary, employment benefits or other compensation denied or lost as a result of Defendant's unlawful and discriminatory acts, together with interest thereon, all in an amount to be proven at trial;

(c)     reinstatement to employment or, if reinstatement is not feasible under the circumstances, an award of damages for future lost wages and benefits of employment;

(d)     equitable restitution and relief sufficient to cover life, disability, or health insurance and any lost retirement benefits due to Defendant's wrongful termination of Plaintiff's employment;

(e)     Compensatory damages for emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, injury to professional standing, injury to character or reputation, injury to credit standing, loss of health, and any other non-pecuniary losses incurred due to the discriminatory conduct;

(f)     punitive damages;

(g)     reasonable attorney's fees and costs; and

(h)     such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims properly triable by a jury.

Respectfully submitted,

**BERGMAR LAW LLC**

_/s/ Nina Maja Bergmar_
Nina Maja Bergmar
Georgia Bar No. 982879
135 Auburn Ave. NE, Ste. 210
Atlanta, GA 30303
nmb@bergmarlaw.com
Tel. (470) 239-2096

Attorney for Plaintiff